UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LAWRENCE CHARLES THREADGILL, III,

    Plaintiff,

v.                                                           Case No. 15-C-0486

ALLAMONT PERINE, JAYNE HOPKINS,
ANTHONY DODD, MARGARET ZARWELL,
and FLOYD ELFTMAN,

    Defendants.

## DECISION AND ORDER

Plaintiff Lawrence Threadgill, proceeding pro se, brought this 42 U.S.C. § 1983 civil rights action against Registered Nurse Margaret Zarwell, Nurse Practitioner Floyd Elftman, Lieutenant Allamont Perine, Lieutenant Jayne Hopkins, and Lieutenant Anthony Dodd. Threadgill alleges Defendants displayed deliberate indifference in violation of the Eighth Amendment regarding his treatment, and lack thereof, for potential injuries from a slip and fall. This case is now before the Court on Defendants' motion for summary judgment. (ECF No. 28.) Threadgill failed to respond to Defendants' proposed findings of fact, despite having been provided the proper notice and warnings as to the consequences of failing to do so. Defendants' proposed findings of fact are therefore deemed undisputed. Civil L. R. 56(b)(4). Based on the undisputed facts, the Defendants' motion will be granted and the case will be dismissed.

## BACKGROUND

Threadgill's claims arise from the alleged injuries he suffered during a slip and fall while jogging in the gym at the House of Corrections in Franklin, Wisconsin on December 20, 2012.

Nurse Zarwell reported to the gym, where Threadgill claimed he could not move. However, Nurse Zarwell observed Threadgill moving his upper extremities, including his head, neck, and arms. Threadgill refused all offers for Nurse Zarwell to assess his injuries in the gym and was moved by wheelchair to the health services unit. Nurse Zarwell observed Threadgill hold his head and neck in a rigid position that required the use of his muscles for approximately an hour. She further observed him moving his legs, arms, head, shoulder, and neck to look up while in the health services waiting area. Threadgill's pulse and skin color in his extremities all appeared normal. Threadgill did not display any behavior consistent with the level of pain he reported.

Nurse Zarwell reported her observations to Mr. Elftman. Mr. Elftman requested that Threadgill walk back into the assessment area in order to receive treatment. Because Threadgill refused to follow instructions, Nurse Zarwell indicated that he would not be evaluated any further in the health services unit. Despite his refusal to cooperate, Threadgill was still given Naproxen to alleviate his pain symptoms. Naproxen was also given to Threadgill on December 20, 21, 22, 25, and 26, 2012.

Lieutenant Dodd reported to health services to assist in Threadgill's return to his cell. While still in the health services waiting area, Lt. Dodd informed Threadgill that he could not force medical services to treat or evaluate him. Lt. Dodd further informed Threadgill if he wanted treatment, he should fill out a health services request. Threadgill claims he filled out medical request forms, but the only forms on file were three grievances complaining that he was not seen by health services. The first grievance was filed with Lt. Perine, who dismissed the claim because he saw Threadgill walking back and forth between the bathroom and the card tables on December 20, 2012. The other two grievances were processed by Lt. Hopkins, who forwarded the grievances to the health center.

Threadgill did not report a need for ongoing medical services relating to his alleged injury

during a meeting with a psychiatric social worker on January 8, 2013. Threadgill was also examined during a comprehensive intake physical exam at the Milwaukee County Jail on February 1, 2013—he raised complaints about dry skin, but made no mention of lingering effects from his alleged December 20, 2012 injury. Threadgill then filed this claim on April 24, 2015.

## ANALYSIS

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460–61 (E.D. Wis. 1991). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In deciding a motion for summary judgment, the court will view the facts in the light most favorable to the non-moving parties. *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004).

A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A deliberate indifference claim based on inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Edwards*, 478 F.3d at 830 (quoting *Greeno*, 414 F.3d at 653). The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Greeno*, 414 F.3d at 653 (citing *Farmer*, 511 U.S. at 834). Mere medical

3

malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. *Edwards*, 478 F.3d at 830–31 (citing *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Greeno*, 414 F.3d at 653; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). Yet, a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Id.* (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

While a back or neck injury resulting in paralyzation would be objectively serious, the undisputed evidence shows that neither Zarwell nor Elftman knew of a substantial risk of harm to Threadgill and then disregarded that risk. Zarwell immediately reported to the House of Corrections' gym after she received the report that Threadgill had slipped and fallen. Recognizing Threadgill's claims that he was in pain and could not move, Zarwell first offered to conduct her evaluation in the gymnasium. Zarwell then ensured that Threadgill was moved to health services and observed his symptoms for approximately an hour before determining that Threadgill could safely walk. Even though Threadgill refused to comply with Zarwell and Elftman's reasonable requests for further treatment, Zarwell still issued Threadgill Naproxen for his reported pain on five of the next seven days. Furthermore, Lt. Perine witnessed Threadgill walking on December 20 and Threadgill did not report any lingering pain on January 8, 2013 or February 1, 2013. These undisputed facts establish that Zarwell and Elftman reasonably viewed any injury harm suffered by Threadgill as not objectively serious and, thus, they cannot be found to have been deliberately indifferent to Threadgill's serious medical needs. Therefore, summary judgement in favor of Zarwell and Elftman is appropriate.

4

Threadgill's claims against Dodd, Perine, and Hopkins also fail as they were not treatment providers and only responded to institutional complaints. Threadgill asserts that Dodd's failure to insist upon treatment at the health services center amounted to deliberate indifference. However, Dodd had no authority at the time—Threadgill was currently in the care of health services. Dodd instructed Threadgill to fill out a health services request if he felt he needed more treatment, which was the extent of Dodd's authority regarding Threadgill's treatment. Likewise, Threadgill only filled grievances with Perine and Hopkins, not medical request forms. Grievance forms have no bearing on whether or not a prisoner is treated. Perine directed Threadgill to fill out a medical request form if he wanted to be seen. (ECF No. 35-2.) Hopkins acknowledged receipt of the grievances she received and forwarded them to the health center. Dodd, Perine, and Hopkins did not refuse to provide medical care to Threadgill; to the contrary, they assisted him in taking the proper steps to seek any needed care. Accordingly, Dodd, Perine, and Hopkins' actions do not amount to a denial of medical care and the claims against them must be dismissed.

## CONCLUSION

Based upon the foregoing analysis, Defendants' motion for summary judgment (ECF No. 28) is **GRANTED** and this action will be **DISMISSED**. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** this   13th   day of December, 2016.

      s/ William C. Griesbach
      William C. Griesbach, Chief Judge
      United States District Court